Folger, J.
The order of which the defendants complained, is not that made by Justice Jambs on the 5th March, 1872, nor that made by Justice Doolittle on the 18th May, 1872. The defendants had notice and were heard upon the granting of each of those. The complaint is of the order made by Justice Doolittle on the 20th May, 1872, by which the defendants’ answer was stricken out absolutely, and they absolutely precluded from making any defence in the action. The ground of complaint is, that the order was made without the defendants having been heard on the application therefor, and without notice to them.
It requires no citation of authority to maintain that, after a party has appeared and pleaded in an action, he is entitled to notice, and has a right to be heard, before the granting of an order so important as one striking out his pleading and precluding him from any defence therein.
It is said that the defendants have had notice, and have been heard; that the order of 5th March, 1872, was granted by Justice James, on notice, and after hearing; and that it is by that order that it is provided that the answer shall be stricken out, and the defendants be precluded from a defence, if they fail to produce the books in a prescribed time. But that order was not absolute and final. It was in the alternative. It was made upon the possibility of something being thereafter done by the defendants, and gave them the opportunity of doing it. Before the order could become absolute or an absolute order be based upon it, the defendants must have failed to comply with its alternative requirements, and the court have legal information thereof. (Brinkley v. Brinkley, 47 N. Y., 40.) One alternative requirement was, “ unless the defendants shall, immediately upon the expiration of said thirty days, obtain, upon affidavits, etc., from a justice of this court an order for leave to show cause why this order has not been complied with,” etc. How, the defendants did *522 comply with this alternative requirement, by procuring from Justice Doolittle, on the 11th April, 1872, such an order to show cause. So that, if the order of 5th March, 1872, is adhered to in the letter of it, they have performed an alternative which was to relieve them from obedience to the prime requirement. Perhaps, however, it is better to regard that alternative requirement as comprehending, not only the obtaining of an order to show cause, but a satisfactory showing of cause as well. Yet then, there remained the alternative of complying with the mandatory part of the order; and before an absolute order could be made, there was the necessity of proving to the court that it had not been complied with. And, upon general principles, this was to be done upon notice to the defendants, so that they might be heard. Part of this was done.
It was shown by affidavit that the defendants had not produced the books, as they were required. It is claimed that the plaintiff was excused from giving notice of motion to the defendants, by reason of the anticipatory penalty, affixed by the first order to a failure to obey its mandate. This would not excuse, unless there was some law which authorized it so to speak.
It is claimed that that portion of the order is well based upon the general rule of the Supreme Court, Mo. 20. That rule provides that the order for discovery shall declare the consequences of omission to comply therewith, and that, upon proof of default, the court at Special Term may, of course, grant a rule absolute giving effect to such order. The inquiry then is, had the judges designated by law to make the general rules, the power to make oné in those terms ?
The power to make general rules was given to the Supreme Court by the Revised Statutes. The .section is found upon the same page, with the sections providing for the compelling the production of books. (2 R. S-, 199, § 19, §§ 21-27.) And it cannot fail of observation that, after that section 19 had given power to make general rules,, to establish, *523 modify alter and amend the practice, in eases not provided for Try any statute’, the sections providing for discovery also require the court to prescribe by general ¡rules, the cases in which discovery may be compelled, and the proceedings for that purpose, where the same a/re not in those sections provided (§ 22) ; and for the staying proceedings of either party until the order for discovery has been complied with or vacated (§ 25). It seems that it was meant, that the power of the court to prescribe in this matter, by general rules, should be limited to the particulars named in these two sections. This has support from the revisers’ note upon these sections, where it is said that they “ have been prepared in such a way as to secure the rights of parties and prevent all danger of abuse.” Again, the language of the twenty-sixth section strengthens this idea. It is this section which empowers to nonsuit the plaintiff, or to strike out the plea or notice of the defendant, and to bar him of a defence, in ease of his refusing or neglecting to obey the order. The fair interpretation is, that the case of a refusal or neglect to comply must first be shown to exist; that it cannot be anticipated either by the order or the general rule of the court, and must be shown as all other facts are shown to the court, when parties have appeared and are litigating, i. e., upon notice. (Commissioners of Kinderhook v. Clau, 15 J. R., 537.) These provisions of the Revised Statutes have not been repealed'by the Code. (Stanton v. Del. Mut. Ins. Co., 2 Sandf. S. C. R., 662; Gould v. McCarty, 11 N. Y., 575). This method of obtaining a discovery of books was framed with care, as we have seen, and was not meant to be changed by general rules adopted by the court. That such was the cotemporary construction, is seen upon reference to the rules adopted in 1830 (Rules 28-31), which do not touch the subject-matter of the above cited section 26. In 1840, Rule 31 was amended, so that, if the discovery was not made in proper time and no sufficient cause was shown, the judge might make an order for nonsuit, or the like, and, on filing such order at the next General or Special Term, an order of the court to the *524 same effect might then be entered as a matter of course. But this, it is apparent, was after opportunity to show sufficient cause had been given.
The proceedings before tis: were taken under the Revised Statutes.
The power to make general rules given by the Code (§ 470), first to the justices of the Supreme Court and then to judges of several courts, is not large enough to authorize the taking away, of this right to be heard upon the making of an order in an action, which is equivalent to a final adjudication upon the rights therein of a party who has appeared. Section 388 gays; “ If compliance with the order be refused, the court, on. motion, may exclude the paper from being given in evidence, or punish the party refusing, or both.” Section 414 recognizes the principle, that where there has been a general appearance in an action the party is entitled to notice of all motions,, Section 470, as originally adopted and since amended, authorizes no general rule inconsistent with the Code.
iSTor does the act of 1870 (chap. 408) make valid the twentieth Rule. That act was not passed with the purpose of legalizing rules ; nor does it profess to continué in force any save those, “ not inconsistent with the Constitution or any statute of the State.”
Our opinion is, that the right to prosecute, or to plead in or defend an action, may not be taken away without a hearing, and that neither a general rule nor an anticipatory order, will stand in the place of notice and opportunity to be heard.
There is no doubt of the right to appeal. The order of 20th March, 1872, being taken ex pa,rie, could be reached by the defendants only by motion to set aside. The order denying the motion was, in effect, an order affecting a substantial right and striking out an answer. (Code, § 11, sub. 2.)
It should be reversed.
All concur.
Order reversed and motion granted, without prejudice to a new application by plaintiff, on notice.